# THE CITY OF MAITLAND v ORANGE COUNTY, FLORIDA, et al.

## COOPER, et al. v ORANGE COUNTY, FLORIDA, et al.
### (Consolidated)

Case No. CI85-13422 and CI85-13522

Ninth Judicial Circuit, Orange County

April 9, 1987

### APPEARANCES OF COUNSEL

**Joel Prinsell** for Orange County.

**Scott E. Wilt** for Battaglia Properties, Ltd.

**Joseph A. Frein** for City of Maitland.

Lawrence Watson for Mark Cooper and Maitland Association of Homeowners.

## OPINION OF THE COURT

LAWRENCE R. KIRKWOOD, Circuit Judge.

### FINAL JUDGMENT ON PETITION FOR CERTIORARI

This cause came to be heard on February 20, 1987, upon the consolidated petitions for Writs of Certiorari filed by the City of Maitland, a municipal corporation located in Orange County, Florida, Mark O. Cooper, a resident of Orange County, Florida, and Maitland Association of Homeowners, Inc., a Florida corporation serving as an umbrella organization representing Maitland Grove Homeowners Association, Maitland Woods Homeowners Association, Bucher Heights Homeowners Association and Druid Isles/Hills Homeowners Association, all located in Orange County ("Petitioners"). The response thereto filed by Orange County, Florida and Battaglia Fruit Company, a Florida corporation, as general partner of Battaglia Properties, Ltd., a Florida limited partnership ("Battaglia"), and a reply filed by Petitioners. The Court makes these findings:

1. The Petitioners seek review and relief from a rezoning application approved by the Board of County Commissioners of the Respondent Orange County on October 28, 1985. The rezoning application in question was filed by Respondent Battaglia Fruit Co., a Florida corporation, as general partner of Battaglia Properties, Ltd., a Florida Limited Partnership ("Battaglia"). The rezoning application sought to change zoning on property owned by Battaglia from residential ("R-1AA", allowing 4.4. residential dwellings units per acre) to commercial planned development ("PD", allowing multi-family residential facilities having 10 dwelling units per acre, along with 240,000 sq. ft. or commercial office space).

2. This matter has proceeded under the Court's certiorari jurisdiction as provided in Section 16, Chapter 63-1716, Laws of Florida (codified at Section 37-16, *Orange County Code*), Fla.R.App.P. 9.100 and the previous orders of this Court dated December 9, 1986 and January 16, 1987. (This Court has dismissed with prejudice those portions of the Petitioners Amended Complaints seeking *de nova* declaratory judgment and injunctive relief).

3. This Court consistent with certiorari review has confined itself to reviewing the record made before the Board. That record has been presented to the Court in the Appendix accompanying the Petition and

the Supplemental Appendix accompanying the response. The Court has considered the citations of authority contained in the Petition, the Response and the Reply. This Court should note that it has also reviewed the numerous citations of case authority which were tendered by the Petitioners for the first time at the oral argument and cases tendered after oral argument by Petitioners, for which the Court allowed the Respondent's an opportunity to rebut or submit additional case authority, as well as proposed final judgments prepared by each side.

4. Certiorari provides this Court with a very narrow scope of review. This Court must limit its consideration to whether the Board's decision is supported by competent and substantial evidence, whether due process was afforded and whether the Board complied with the essential requirements of law. The record for Certiorari review consists exclusively of the information presented to the lower tribunal. This Court in Certiorari review must not substitute its judgment for that of the Board whose decision is being reviewed. This Court cannot re-weight the evidence, challenge fact finding or substitute its judgment or opinion of evidence for that of the Board.

5. This Court finds the *Writ of Certiorari* should be Granted, the rezoning application approval of October 28, 1985, should be quashed and set aside, and this matter remanded to Respondent Orange County's Board of County Commissioners for further action not inconsistent with this ruling.

6. The parcel of land involved here consists of approximately 33 acres which has historically been used as a citrus grove. The property forms in irregular rectangle running from east to west and is located near the northern boundary of Orange County. The property is bounded on the north by a street known as Maitland Boulevard (a four-lane limited access road also known as State Road 414), on the west by land owned by a local church, on the south by a street known as Sandspur Road (a two-lane roadway serving residential areas to the east, south, and west), and on the east by a residential subdivision known as Bucher Heights. The property is virtually surrounded by residential single-family homes owned by members of Petitioner Home-owner's Association. The property is surrounded by Petitioner City of Maitland on the east, south and west. The only access to the property is through the City of Maitland. The property is subject to the jurisdiction of the Respondent Board of County Commissioners only because it is part of an unincorporated enclave of land projecting into the city limits.

7. In 1980, Respondent Orange County adopted a comprehensive

130

Growth Management Plan as required by Section 163.3161 *et seq.*, Florida Statutes. The plan, in broad terms intended to chart an orderly growth pattern for the Orange County area, includes numerous chapters or "elements" describing growth policies in terms of transportation, conservation, land use, economics, and intergovernmental-coordination—all as required by Section 162.3177, Florida Statutes. In addition to its written text, the Growth Management Plan also contains a "visual representation" of the overall growth plan. Pursuant to the plan, the subject property was thus designated to be single-family residential and the property has been zoned single-family residential since 1957.

8. On May 16, 1985, Respondent Battaglia filed an application to rezone the property from residential ("R-1AA") to planned development ("PD"). The development called for 240,000 square feet of professional office space to be built in several office buildings covering 28 acres of the tract, with the remaining 5.0 acres developed as a 50 unit multi-family residential project. Under applicable Orange County procedures, the rezoning requested by Respondent Battaglia came under consideration by the County Development Review Committee, the County Planning and Zoning Commission, and finally, the Orange County Board of Commissioners itself.

9. On June 13, 1985, the Orange County Development Review Committee ("DRC") reviewed Respondent's application. After comparing the proposed planned development with the Growth Management Plan, the DRC found the projected was "inconsistent with the particular land use of the policy." Further, the DRC found that the proposal was "incompatible with the adjacent single family development, and would establish a precedent for the strict commercialization of—[sic] along Maitland Boulevard." *Orange County DRC Hearing Transcript,* June 13, 1985 at 44. The DRC recommended "multi-family, low-medium density residential as consistent with the Growth Management Plan."

10. Two months after the DRC hearing, in August of 1985, the Respondent Orange County revised, re-adopted, and reconfirmed the Growth Management Plan and the Future Land Use Policy Guide Map. No changes were made in the Growth Management Plan or the Land Use Map concerning the Respondent Battaglia's property. The revised map and plan called for the Respondent's property, along with all property surrounding it, to generally continue as lands allocated for *single-family, or low-density residential development.* (emphasis added)

11. On September 19,1985, one month after Respondent Orange

County reconfirmed its commitment to the Growth Management Plan, the Orange County Planning and Zoning Commission considered the application for rezoning from Respondent Battaglia. Despite contrary recommendations from the Development Review Committee, Planning and Zoning recommended approval of the proposed zoning change and apparently did not directly consider inconsistencies between the project and the Growth Management Plan.

12. On October 21, 1985, the proposal was presented to the Respondent Orange County's Board of County Commissioners for final action. On that date a public hearing was conducted with only four of five county commissioners present. During the October 21 hearing, Respondent Battaglia submitted evidence concerning the nature of the project. A number of homeowners then voiced their objections and concerns including the assertion that the project was incompatible with the plan. With the exception of a brief rebuttal argument by an attorney representing Respondent Battaglia, no evidence was submitted to demonstrate consistency of the proposed project with the Growth Management Plan. No attempt was made to alter the plan or its land use map.

13. At the close of the October 21 hearing, a representative of the county attorney's office specifically advised the Board it was "incumbent" upon the Board to review the rezoning proposal in light of the Growth Management Plan in its entirety and determine whether the proposal is consistent with the plan. *Orange County Commissioners' Meeting Transcript*, October 21, 1985, at 67-68. Following that admonition, one commissioner expressed his opinion that the planned development was consistent with the Growth Management Plan and moved to approve the rezoning. *Id.* at 69. After the Chairman called for a second and none was forthcoming, the Chairman "passed the gavel," and seconded the proposal himself. The vote to approve the requested zoning change resulted in a 2 - 2 tie vote. The Chairman, who had seconded the motion to approve and voted in favor of the proposal to rezone, then ruled the proposal would be considered at the next meeting, when the Commissioners would "vote again on it." *Id.* at 75. The October 21 meeting was then concluded.

14. The next meeting of the Respondent Orange County's Board of County Commissioners was held October 28, 1985, one week later. The Commissioners who had been absent at the previous week's meeting was in attendance. He announced that he had listened to tapes of the previous meeting and reviewed the file. A motion was again made and seconded to approve the rezoning proposal. The resulting vote was 3 - 2 in favor of approving the rezoning request.

132

15. The Petitioner's present several issues for review by this Court, first, procedural due process violations in the October 28 hearing by a vote by Respondent Orange County's Board of County Commissioners. This Court finds that the October 21, 2 -2 tie vote constituted a failure of the motion to approve the rezoning application. The application, therefore, cannot be reconsidered under Orange County ordinances until a nine month "cooling off" period was elapsed. Section 37.18 Code of Orange County. The motion to approve, having been defeated on October 21, could not legally be carried over for a re-vote on October 28. The Court finds procedural due process was denied Petitioners by the Respondent Orange County's Board of Commissioners' failure to properly give effect to the 2 - 2 tie vote on October 21, 1985.

16. Respondent Orange County has admitted its Board of County Commissioners has not formally adopted any rules of procedure. Absent such adoption, Respondent Orange County's Board of Commissioners, like any other deliberative body, is guided by generally accepted rules of parliamentary procedure. In the absence of statute or special rule, general parliamentary principles control. 59 Am.Jur.2d *Parliamentary Law* Sec. 3. Under the common law or the parliamentary law or Roberts Rules of Order, any motion subject to a tie vote fails adoption, 59 Am.Jur.2d *Parliamentary Law* Sec. 11.

17. The October 21 vote to approve the rezoning resulted in a tie, parliamentary law and common law requires that the motion was denied. It is clear from the transcripts submitted herein, the Respondent Orange County's Board of County Commissioners carefully followed generally recognized precepts of parliamentary law in this proceeding: by calling the meeting to order, action upon motions duly presented and seconded, voting upon a call of the question. When there was no second forthcoming on the pending motion, a chairman even went to the effort to "pass the gavel" (step down from the chair) before making the second himself. Having thus abided by parliamentary law for a portion of the meeting, the Board cannot deviate from general parliamentary law thereafter by not according the tie vote its full weight. Carrying the application over to another meeting for a second vote to approve the application was clearly improper and violated the Petitioner's rights.

18. The failure to recognize the October 21 vote as a full and complete binding denial deprived Petitioners of their constitutionally protected right to due process of law. The Respondent Orange County Board of County Commissioners, cannot play fast and loose with the

**133**

"rules" so as to discriminate against the Petitioners. The failure to adopt parliamentary procedure rules, also violates Petitioners due process rights. The Petitioners have a right to rely upon general principles of parliamentary procedures or those adopted by the Commission.

19. Other issues raised by Plaintiff that their rights to procedural due process were not honored when the Respondent County's Board of Commissioners apparently made a determination that the proposed zoning change was consistent with the County's Growth Management Plan without evidence to warrant such a finding, also the facts in the record, clearly mandate an opposite conclusion. The Court finds that the subject project and requested rezoning, are clearly inconsistent with the Growth Management Plan. Florida law requires that a land use proposal must be consistent with the local government's comprehensive plan before the land use proposal can be adopted. See Section 163.3194(1)(b), Florida Statutes.

20. Section 163.3194(3)(a), Florida Statutes, defines the term "consistent" by noting "a development order or land development regulation shall be consistent with the comprehensive plan if the land uses, densities or intensities, and other aspects of development permitted by such order or regulation are *compatible with and further the objectives, policies, land uses, and densities* or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government." (emphasis added) It is thus abundantly clear Florida Statutes and case law require any attempt to amend or rezone property to be in harmony with an adopted comprehensive growth management plan. Since consistency of the proposed rezoning with the plan is thus a mandatory condition to approval of the rezoning, a finding of consistency without evidentiary basis is procedurally erroneous.

21. Section 163.3177(2), Florida Statutes, requires that several elements of the Plan are to be coordinated and consistent with one another so that all of the elements form a unified and consistent direction for the future. Merely looking at one or two isolated policies thus improperly ignores the rest of the comprehensive plan. It seems clear the plan must be viewed as a whole. By virtue of Section 37-86, of the Orange County Code, as ratified in 1985, "[t]he map is intended to be a visual representation of *the goals, objectives and policies* contained in the Growth Management Policy *and of the proposed general distribution location and extent of the uses of land* and is to be interpreted as a flexible guide which may undergo changes during the planning period. . . ." (emphasis added)

134

22. It is clear the map is considered a "flexible guide"—a guide which, accordance to the ordinance, "may undergo changes *during the planning period*." (emphasis added) It would therefore seem the time to change the map—and the growth management policy represented by the map—would be during the planning sessions instituted for that purpose—not rezoning hearings. Zoning of individual parcels must adhere to, and be consistent with the plan. The public has right to know and rely upon the map and the Growth Management Plan, otherwise, the public must attend each and every meeting where the Board of County Commissioners might change the plan in addition to those meetings specifically called "planning period" meetings. The record clearly contains insufficient, competent and substantial evidence to support the Board's decision of October 28, 1985.

23. The Respondents have *failed* to convince the Court that the record supports their conclusions: the Board's decision was supported by a competent and substantial evidence; that the Board's decision was in agreement with rights of due process; and that the Board's decision complied with the essential requirements of law.

CONSIDERED, ORDERED AND ADJUDGED as follows:

The rezoning approval issued by Respondent, Orange County's Board of County Commissioners, on October 28, 1985, is QUASHED and this matter is REMANDED for such further action as the parties may desire not inconsistent with the ruling.

DONE AND ORDERED in Chambers, at Orlando, Orange County, Florida, this the 9th day of April, 1987.